UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOEL NOONKESTER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00223-O |
| § | |
| ELITE DEBT BROKERS, LLC; ALLIED § | **(Consolidated with No. 4:21-cv-00700-O)** |
| FINANCIAL GROUP, LLC; MICHAEL § | |
| BOVINO, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION & ORDER

Before the Court in case No. 4:22-cv-00223 are Defendant Michael Bovino's Motion to Dismiss (ECF No. 15), filed June 28, 2022; Defendant Allied Financial Group, LLC' Motion to Dismiss (ECF No. 16), filed June 29; Defendant Elite Debt Brokers, LLC's Motion to Dismiss (ECF No. 17), filed June 29; Plaintiff's Response (ECF Nos. 28, 29), filed July 19–20; and Defendants' Reply (ECF No. 31), filed August 2. Having considered the motions, briefing, and applicable law, the Court **DENIES** the motions to dismiss.

I. **BACKGROUND**

Plaintiff Joel Noonkester obtained two payday loans from CashNetUSA and QC Holdings, Inc.[1] Noonkester used the funds for personal expenses and defaulted on both loans. CashNetUSA sold Noonkester's account to Rocky Mountain Capital Management, LLC, who then transferred the account to Defendant Elite Debt Brokers, LLC. In March 2021, Elite transferred the account to Allied Financial Group, LLC, but retained rights to, among other things, (1) repurchase the account, (2) require Allied to withdraw the account from any third-party collection agency, and

---

[1] The Court recites the facts as stated in the Amended Complaint (ECF No. 14), which at this stage the Court must accept as true. *See Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

(3) require Allied to maintain a compliance management system. Likewise, QC Holdings sold Noonkester's other account, which ended up in the control of Nationwide Capital Services, LLC. Nationwide then sold the account to Allied and, like Elite, retained certain rights to the debt.

Noonkester then began receiving phone calls about both debts. The debt collector repeatedly called Noonkester, his wife, and his nephew. The collector left a voicemail on Noonkester's cell phone referring to a "case that is being filed through Hood County" in which there was an "order for [Noonkester's] location." Am. Compl. 9, ECF No. 14. The phone number maintained by the debt collector belongs to Allied, but Noonkester believes Allied may have provided the number to an agent of Elite. When Noonkester returned the call, an employee of the debt collector told Noonkester that he would be sued for over $1,000 if he did not immediately remit payment. Noonkester paid the collector $212 via credit card over the phone. After Noonkester's payment was processed, he received an email from the debt collector declaring that the matter had been dismissed.

One year later, Noonkester sued Elite, Allied, and Michael Bovino, who is the owner and manager of Allied. *See* Compl. ECF No. 1. Noonkester's amended complaint asserts claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), violations of the Texas Finance Code, and invasion of privacy. *See* Am. Compl. 16–20, ECF No. 14. Defendants moved to dismiss for insufficient service of process, lack of personal jurisdiction, failure to state a claim, and duplicative claims. *See* ECF Nos. 15–17. The parties briefed the issues, which are now ripe for review.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Under Rule 12(b)(5)

A party may move to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). When a party challenges the form or method of service, the serving party bears

the burden of establishing its validity. *Quinn v. Miller*, 470 F. App'x 321, 323 (5th Cir. 2012) (citing *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). If the serving party fails to carry his burden, the district court may quash service and dismiss the claim, or it may extend time for obtaining proper service. *See Gartin v. Par Pharm. Cos.*, 289 F. App'x 688, 692 (5th Cir. 2008).

### B. Motion to Dismiss Under Rule 12(b)(2)

A party may move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the burden of proof is on the party invoking the district court's jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). "[T]he party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985). "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor . . . ." *Id.* at 546.

### C. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). A court may not accept legal conclusions as true, and only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

III. ANALYSIS

    A. Service of Process

Bovino moves to dismiss under Rule 12(b)(5) for insufficient service of process.[2] Bovino included a declaration stating that the process server left a package containing process on the front step of his house. *See* Bovino Decl., ECF No. 15. In response, Noonkester submitted an affidavit of service. *See* Resp. Br. Ex. 1, ECF No. 28-1. The process server declares under penalty of perjury

---

[2] Allied also moves for dismiss for insufficient service of process, but that appears to be a mistake on the part of counsel, who copied Bovino's argument into Allied's brief. *Compare* Bovino's Br. 9–10, ECF No. 15, *with* Allied's Br. 8, ECF No. 16. Regardless, Noonkester has carried his burden to demonstrate proper service of process of all parties. *See* ECF No. 12.

4

that she served process at the residence of Michael Bovino on July 2, 2022: "I rang the doorbell and a man answered. He stated his name was Michael and that Allied Financial Service was his business. He took the documents and told me to leave." *Id.* The service of process described in the affidavit complies with Rule 4(e), and Bovino does not rebut the sworn affidavit with competent evidence. The Court thus **DENIES** the motion to dismiss under Rule 12(b)(5).

### B. Personal Jurisdiction

All three Defendants move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. "A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). "Because Texas's long-arm statute reaches to the constitutional limits, the question . . . is whether exercising personal jurisdiction over the defendant offends due process." *Id.*

The exercise of "[p]ersonal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion Prop. & Cas. Ins. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)). When a nonresident defendant "purposefully avail[s] himself of the benefits of the forum state, so that he 'should reasonably anticipate being haled into court' there," the defendant's conduct establishes minimum contacts. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction." *Clemens*, 615 F.3d at 378.

All three Defendants argue that they lack minimum contacts establishing either specific or general personal jurisdiction in Texas. They argue that merely contacting a Texas resident is insufficient to subject them to Texas's jurisdiction. *See* Bovino's Br. 5–6, ECF No. 15; Allied's Br. 4–5, ECF No. 16; Elite's Br. 6–7, ECF No. 17 (all citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004)). But in the line of cases Defendants rely on, "the communications with the forum did not actually give rise to a cause of action." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). "Instead, the communications merely solicited business from the forum, negotiated a contract, formed an initial attorney-client relationship, or involved services not alleged to form the basis of the complaint." *Id.*; *see also Freudensprung*, 379 F.3d at 345. In contrast, communications do constitute purposeful availment "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action." *Wien Air Alaska*, 195 F.3d at 213. That is because "[t]he defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas." *Id.* at 213 (citation omitted). Noonkester alleges that Defendants, acting individually or through various agents, repeatedly placed calls to Noonkester and his family members, who reside in Texas. Noonkester alleges that the calls themselves were tortious communications, which "constitutes purposeful availment." *Id.*

Defendants cite *Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462 (E.D. Tex. 2020), in which the district court declined to find purposeful availment in an FDCPA case. In *Palmer*, the plaintiff claimed a Puerto Rican university mailed letters to Texas to collect a debt incurred in Puerto Rico and thereby committed a tort in violation of the FDCPA. *Id.* at 469. The court observed that "the totality of the University's contacts with Texas involve[d] mailing an invoice to [the plaintiff's] Texas residence." *Id.* The court concluded that the single invoice was not purposeful availment of the laws of Texas for the collection of the debt. *Id.* But this case is

different. Noonkester alleges that Defendants levied multiple communications to multiple Texas residents to collect on a debt incurred in Texas. Those communications constitute purposeful availment. *See Wien Air Alaska*, 195 F.3d at 213.

Defendants also argue that Defendants did not place the phone calls themselves, and thus did not take the actions that constitute purposeful availment. "A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018). Under Texas law, an agency relationship exists when "the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Id.* Noonkester repeatedly alleges that Allied and Elite, which are both LLCs, acted through their employees as agents. Am. Compl., ECF No. 14. Likewise, Bovino, the owner and manager of Allied, "oversees the company's collection policies and collector training, and . . . supervises day-to-day operations at Allied including its collection efforts." *Id.* at 4. That other employees may have placed the phone calls thus does not absolve Defendants of purposeful availment.

"Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska*, 195 F.3d at 215. "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The standard is whether the exercise of jurisdiction over Defendants would "offend 'traditional notions of fair play and substantial justice.'" *Id.* at 211 (citation omitted). The Court balances "the burden on the defendant having to litigate in the forum; the forum state's interests in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in

furthering fundamental social policies." *Id.* at 215. "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Id.*

Again, all three Defendants make the same argument: they claim the first factor weighs against asserting jurisdiction because they are out-of-state residents who would be forced to travel to Texas to litigate the suit. *See* Bovino's Br. 9, ECF No. 15; Allied's Br. 7–8, ECF No. 16; Elite's Br. 9, ECF No. 17. Defendants further argue the other factors are neutral because the same relief is available to Noonkester under the FDCPA regardless of where the suit is litigated. Defendants' cursory assertions overlook (1) the interests of Texas in the lawsuit, which includes state law claims; (2) Noonkester's interest in convenient and effective relief, which includes litigating the companion case in this Court; (3) the Court's interest in efficient resolution of this case and the companion case; and (4) the Texas legislature's expressed policy discouraging certain debt-collection practices. *Wien Air Alaska*, 195 F.3d at 215. The burden on Defendants is minimal, and "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Id.* Defendants are subject to the jurisdiction of this Court, so the Court **DENIES** the motion to dismiss under Rule 12(b)(2).

### C. Failure to State a Claim

All three Defendants move to dismiss under Rule 12(b)(6) for failure to state a claim. They argue that Noonkester does not allege that any particular Defendant actually placed the allegedly tortious phone calls. *See* Bovino's Br. 10–12, ECF No. 15; Allied's Br. 8–10, ECF No. 16; Elite's Br. 10–12, ECF No. 17. But that is incorrect. The amended complaint alleges that Allied placed the phone calls and left the voicemail on Noonkester's cell phone. Am. Compl. 10, ECF No. 14. The complaint further alleges that Bovino is the "owner, officer, and manager of Allied who oversees the company's collection policies and collector training, and who supervises day-to-day operations at Allied including its collection efforts." *Id.* at 4. Bovino argues he is insulated from

8

liability for any acts Allied committed because Allied is an LLC. *See* Bovino's Br. 10–12, ECF No. 15. But Noonkester alleges that Bovino is himself a debt collector under the FDCPA, which does not require piercing the corporate veil. *See Kistner v. L. Offs. of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437–38 (6th Cir. 2008). In the alternative, the complaint alleges that an agent of Elite placed the calls at Elite's direction. *Id.* at 10–11. A party may plead alternative or inconsistent facts and remedies against several parties. *See* Fed. R. Civ. P. 8(a)(2), 8(d), 20. Noonkester's amended complaint plausibly supports inferences that Defendants are debt collectors who violated the FDCPA.

The amended complaint also properly alleges a civil conspiracy. Noonkester alleges that Allied and Elite (1) formed a combination (2) to violate the FDCPA and commit other tortious acts, (3) had a meeting of minds on the course of action, and (4) committed unlawful, overt acts that (5) proximately caused damages. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998). Defendants argue that the FDCPA does not support civil conspiracy or vicarious liability, but they cite no relevant authority. They also do not confront the principle that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Noonkester's complaint alleges sufficient facts to state claims against all three Defendants under the FDCPA, under the Texas Finance Code, and for invasion of privacy. Defendants' arguments to the contrary are unpersuasive. The Court thus **DENIES** their motions to dismiss under Rule 12(b)(6).

### D. Duplicative Claims

Defendants Bovino and Elite move to dismiss claims against them as duplicative. *See* ECF Nos. 15, 17. They argue that Noonkester's claims in this case are duplicative of the claims in the companion case, *Noonkester v. Capital Management Holdings, LLC*, No. 4:21-cv-700. But the

9

cases involve different Defendants. Bovino and Elite do not admit that any Defendant is merely an alter ego of another. They also do not explain how claims against different Defendants are duplicative. The Court thus **DENIES** their motions to dismiss the claims as duplicative.

## IV.   CONCLUSION

Defendants submitted virtually identical briefs in support of their motions to dismiss, but all their arguments fail. Defendants were properly served, the Court has jurisdiction over Defendants, the amended complaint states claims against them, and the case is not duplicative of its companion case. The Court thus **DENIES** the motions to dismiss (ECF Nos. 15, 16, 17).

**SO ORDERED** on this **17th day** of **August, 2022**.

*[Signature]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

10