IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOEL NOONKESTER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00223-O |
| § | |
| CAPITAL MANAGEMENT § | |
| HOLDINGS, LLC, *et al.*, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion for Attorney Fees and Costs filed by Plaintiff Joel Noonkester ("Noonkester") (ECF No. 77); the Response in Opposition and appendix in support filed by Defendants Elite Debt Brokers, LLC, Allied Financial Group, LLC, and Michael Bovino, collectively ("Defendants") (ECF Nos. 80, 81); and Noonkester's Reply (ECF No. 85). By Order dated July 20, 2023, United States District Judge Reed O'Connor referred the Motion to the undersigned for hearing, if necessary, and final determination if permitted or recommendation under 28 U.S.C. § 636(b)(1). Having considered the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion (ECF No. 77) **in part** and **DENY** it **in part**.

I.  **BACKGROUND**

The Court previously has described the transaction that led to Noonkester's suit against the Defendants under the Fair Debt Collections Practices Act ("FDCPA") and Texas Finance Code, and for the privacy tort of intrusion upon seclusion. *See* ECF No. 84 at 1-2. Judge O'Connor and the parties are aware of the underlying facts, and further repetition is unnecessary. On June 28,

2023, Noonkester accepted an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure in the amount of $3,000. ECF No. 72. The Offer of Judgment also provided that Noonkester "shall be entitled to his reasonable attorney fees and costs on motion to the Court." *Id.* at 2. Noonkester now seeks an award of $131,184.00 in attorney's fees and $9,796.53 in costs under 15 U.S.C. § 1692k(a)(3) as the prevailing party. ECF No. 77 at 3, 11.

## II.   LEGAL STANDARD FOR AWARD OF ATTORNEY FEES

The Court has "broad discretion in setting the appropriate award of attorneys' fees." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)). The first step in setting an appropriate award is determining the "lodestar" of the relevant fees. *Id.* "The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *League of United Latin Am. Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) [hereinafter *LULAC*] (citing *Hensley*, 461 U.S. at 434). The lodestar is presumably reasonable, but the Court "may adjust it upward or downward in exceptional cases." *Id.*; *see also Cobb v. Miller*, 818 F.2d 1227, 1231 (5th Cir. 1987) ("[T]he calculation of the lodestar does not end the inquiry[,] and [] other considerations may persuade the district court to increase or decrease a fee award.").

After calculating the lodestar, the Court must evaluate the amount considering the twelve factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors include: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations imposed by the client or circumstances"; (8) "the

amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorneys"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases." *Id.* (cleaned up); *see also* Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, §9) (incorporating some of the *Johnson* factors into the State Bar of Texas's rules of professional conduct). "[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

"[I]t will not always be necessary for a district court to address each of the twelve factors in explaining the considerations affecting its decision." *Davis v. Fletcher*, 598 F.2d 469, 471 (5th Cir. 1979). Nevertheless, "[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (citation omitted). "Courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (quoting *Kellstrom*, 50 F.3d at 324) (cleaned up). While the absence of contemporaneous billing records "does not preclude an award of fees per se," the evidence must be "adequate to determine reasonable hours." *Id.* (quoting same at 325) (internal quotation marks omitted).

### III.  ANALYSIS

Under the clear terms of the Offer of Judgment, Noonkester is entitled to recover his "reasonable attorney fees and costs." ECF No. 72 at 2. In support of his request for $131,184.00

3

in attorney's fees and $9,796.53 in costs, Noonkester argues that the Defendants expended "tens of thousands of dollars" in defending the suit and are responsible for the large amount of attorney's fees that Noonkester incurred through their aggressive tactics in filing numerous motions and opposing reasonable discovery. *Id.* at 2-10. Defendants respond that Noonkester is not entitled to any attorney's fees, and if he is, the Court should reduce the award due to certain excessive expenditures of attorney time. ECF No. 80.

The Court notes at the outset the Fifth Circuit's admonition that "the FDCPA does not support avaricious efforts of attorneys seeking a windfall. Because grossly excessive attorney's fee requests directly contravene the purpose of the FDCPA, these tactics must be deterred." *Davis v. Credit Bureau of the South*, 908 F.3d 972, 981 (5th Cir. 2018). In analyzing the fees charged and expenses incurred here, the Court recalls the contentious hearings in this case and the animosity between counsel for the parties reflected in their filings and documentation of correspondence between the two sides. In recommending that Judge O'Connor award Noonkester attorney's fees and costs in the amounts discussed below, the undersigned observes that both sides of the case aggressively advanced the cause of their clients, with apparent disregard of the realistic amount in controversy in this case and the ultimate amount that Noonkester could recover at a trial or that the Defendants would have to pay him after entry of an adverse judgment. Regardless of the motivating reason for their doing so, the Court's task here is to identify the reasonable attorney's fees and costs to which Noonkester is entitled under the terms of the Offer of Judgment.

The Court begins by calculating the lodestar, which "is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *LULAC*, 119 F.3d at 1232. In support of his request for attorney's fees, Noonkester offers the Declarations of

Jeffrey D. Wood, Esq., and Jonathan L. Hilton, Esq. (collectively "the Declarations") and timesheets, receipts, and invoices supporting the Declarations. ECF Nos. 77-1, 77-2, and 77-9.

The Declarations and attached billing records reflect that Mr. Wood is a solo practitioner specializing in consumer law cases with offices in both Little Rock, Arkansas and Rockwall, Texas. ECF No. 77-1 at 2-3. He was admitted to practice in Arkansas in 2006, and his billing rate in this case was $400.00 per hour. *Id.* Mr. Wood has been counsel in over 500 FDCPA cases, filed and unfiled, and he opines that $400.00 per hour is a reasonable billing rate in this case. *Id.* With Noonkester's permission, Mr. Wood associated Mr. Hilton and his partner Mr. Parker because they had previously had cases with Defendants' counsel, and Mr. Wood feared that Defendants' counsel "would begin a war of attrition over this case." *Id.* at 3. Mr. Wood declared that although many FDCPA cases could be handled by a single lawyer, this case was different, and "very few solo practitioners in the FDCPA sphere would have been able to see the case through to the end and achieve a strong result for the client." *Id.*

Messrs. Hilton and Parker are attorneys in Hilton Parker LLC and previously worked as associate attorneys at Jones Day. ECF No. 77-2 at 4-5. They were admitted to the Ohio Bar in 2016 and billed at the rate of $330.00 per hour in this case. *Id.;* ECF No. 77-8.

Billing statements included with the Motion reflect that Mr. Wood incurred $23,200 in attorney's fees (54.7 hours at $400.00 per hour, plus 6.6 hours "written down to half rate" at $200.00 per hour) and $1,044 in expenses (two filing fees of $402.00 each and four process server fees totaling $240.00). ECF No. 77-7 at 8 (cleaned up). They also show that Mr. Wood wrote off $7,680.00 of attorney's fees (19.2 hours at $400.00 per hour) from his request for fees in the Motion. *Id.* Billing statements for Messrs. Hilton and Parker show that they incurred over $140,000 in attorney's fees, which they "wrote down" to a reduced amount of attorney's fees claimed of

5

$107,984.00. ECF Nos. 77 at 3, 77-8. This amount of attorney's fees equates to 349.4 hours of attorney time (302.7 hours at $330.00 per hour, plus 46.7 hours that Messrs. Hilton and Parker billed at a half rate of $165.00 per hour), and 3.1 hours of paralegal time at a rate of $125.00 per hour. ECF No. 77-8. Messrs. Hilton and Parker also billed Nonkester for $8,752.53 in expenses. *Id.* Thus, the lodestar equals $131,184.00. Also, Noonkester seeks to recover $9,796.53 in expenses and costs. ECF No. 77 at 3.

The Court can adjust the lodestar up or down based on an analysis of the twelve *Johnson* factors. *See Johnson*, 488 F.2d at 717-19. After considering the briefing and supporting evidence that Noonkester filed, the Court concludes that no upward adjustment is warranted. Half of the *Johnson* factors are neutral (factors 2, 3, 4, 7, 10, and 11), and the other half indicate that the lodestar amount is unreasonable (factors 1, 5, 6, 8, 9, and 12). None indicate that the total fees are reasonable. Moreover, the most important of the *Johnson* factors—"the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel," *see Migis*, 135 F.3d at 1047—do not suggest that the lodestar amount is reasonable.

To briefly touch on the neutral factors, factor two is not at issue here because this case is a FDCPA action involving a single defendant and limited alleged violations of the Act, thus presenting no "novel" or "difficult" legal questions. *See Johnson,* 488 F.2d at 718. Likewise, the third factor is not relevant because this case does not require attorneys with highly specific or niche competencies, though Noonkester's counsel did have significant experience in the subject matter at issue. *See id.* And none of Noonkester's counsel suggested that he was significantly precluded from other work by taking this case, rendering the fourth factor inapplicable. *See id.* Further, there was no suggestion that pressing time constraints apply to this action or atypical "time limitations

6

imposed by the client or circumstances." *Id.* Because the case presents nothing uniquely undesirable from a practitioner's perspective, the tenth *Johnson* factor also does not inform the Court's inquiry. *See id.* at 719. And finally, "the nature and length of the professional relationship with the client" does not factor into the Court's reasonability analysis because nothing of record reflects the nature and extent of Noonkester's relationship with any of his lawyers. Accordingly, that factor is irrelevant for the Court's reasonability analysis. *See id.*

As for factors suggesting that $131,184.00 would be a reasonable attorney fee for work in this matter, the first *Johnson* factor is "the time and labor required" for an attorney to prosecute the action. *Id.* at 717. Initially, the Court must determine if the attorney's fees requested represent a reasonable number of hours expended at a reasonable hourly amount. *Alexander v. City of Jackson Miss.*, 456 F. App'x 397, 399-400 (5th Cir. 2011). The Court concludes that the $400.00 hourly rate for Mr. Wood and $330.00 rate for Messrs. Hilton and Parker were reasonable based upon the Court's familiarity with the reasonable, usual, and customary billing rates in the Fort Worth Division of the Court for lawyers with similar years of experience and backgrounds.

However, the Court must conclude that the amount of time spent on this case by Noonkester's attorneys far exceeds the reasonable number of hours that are incurred in the prosecution of a case that, at most, involves an amount in controversy of less than $10,000. For that reason, Noonkester's fee award request is exceptional, and an adjustment in the lodestar amount is necessary in the interest of justice. Although Noonkester's lawyers apparently incurred the excessive number of hours in this case reflected in their timesheets submitted to the Court, it is not reasonable to conclude that they did so solely to represent Mr. Noonkester in his quest to recover a few thousand dollars in damages at the conclusion of his case.

Their billing records reflect numerous instances of billing for attorney conferences, travel, strategy sessions, research, and drafting that far exceed the reasonable requirements of a relatively small case. Although hotly contested by counsel, this case is a straightforward suit under the FDCPA. It seems like a prime candidate to be tried quickly without the expenditure of large sums for extensive discovery. Instead, the case resulting in the filing of numerous motions to dismiss, strike, reconsider, stay, and limit discovery and for sanctions and summary judgment, culminating in Noonkester's acceptance of a $3,000 payment, a figure that pales in comparison to the amount of time and fees incurred to secure it. *See* filings summarized at ECF No. 77 at 7-8.

The Court finds that the number of hours incurred by Noonkester's counsel exceed a reasonable amount given the amount in controversy. Having examined the relevant billing records, the Court concludes that $40,000.00 in attorney's fees and $9,796.53 in expenses and costs, totaling $49,796.53, is a reasonable amount of attorney's fees and costs to be awarded to Noonkester. This figure provides reasonable, compensation for 100 hours of reasonable and necessary legal representation and accompanying expenses and costs. Consequently, the first *Johnson* factor indicates the lodestar amount of requested fees is unreasonable and should be adjusted downward. *See Johnson*, 488 F.2d at 717.

The fifth *Johnson* factor, which looks to the "customary fee" in similar cases, also lends further support to a downward adjustment to the lodestar. *See id.* at 718. In this regard, "courts in the Northern District [of Texas] have approved regular hourly rates of $345, $350, and $375." *Koehler v. Aetna Health Inc.*, 915 F. Supp. 2d 789, 799 (N.D. Tex. 2013) (citing *Paris v. Dallas Airmotive, Inc.*, 2004 WL 2100227, at *8 n.5 (N.D. Tex. Sept. 21, 2004)). While $400.00 exceeds these amounts and indeed is a substantial sum of money for an hour's work, it is not beyond the upper range of reasonableness for a lawyer with over ten years of experience in business litigation

who regularly appears in the Fort Worth Division of the Court. The fifth factor is naturally accompanied by the sixth— "whether the fee is fixed or contingent." 488 F.2d at 718. Ordinarily, larger fees may be justified if the fee is contingent. But here the fee is not relatively large, and the fact that Noonkester's counsel apparently represented him on an hourly basis facilitates efficient calculations like the one conducted above. The sixth factor supports an attorney's fee award of $40,000.00 in fees here.

By far, the most important factor in this case is *Johnson*'s eighth factor: the "amount involved and results obtained." *See id.* at 718-19; *Northwinds Abatement, Inc. v. Emps. Ins. Of Wausau*, 258 F.3d 345, 354 (5th Cir. 2021) ("[T]he most critical factor in determining an award of attorney's fees is the 'degree of success obtained' by the victorious plaintiffs."). The eighth factor makes $40,000.00 seem reasonable (although this amount is still over thirteen times the damages that Noonkester will receive under the Offer of Judgment). Given the significant reduction in the number of hours incurred to a reasonable number, Judge O'Connor should grant $40,000.00 in attorney's fees and $9,796.53 in expenses and costs.

Based on a full review of the pleadings in this consolidated matter, the Court concludes that the number of hours incurred by Noonkester's lawyer was unreasonable. Rarely do attorneys avoid duplicating efforts or overlapping tasks in a case, especially when the lawyers are in different firms, but this case is beyond the norm. The number of hours incurred far exceed what a reasonable amount of time and effort would equal in a case such as this one, which involves only one plaintiff and a limited scope of alleged violations of the FDCPA. This is especially so where one of Noonkester's attorneys (Mr. Wood) has an office within a two-hour drive to the Court, while the others (Messrs. Hilton and Parker) are in another part of the country, necessitating costly travel in a case with such a relatively small amount in controversy.

The reasonable number of hours expensed would equal 100 total hours. Because this significantly reduces the number of hours, the Court applies the higher reasonable billing rate of $400.00 per hour to the number of hours and concludes that Nonkester is entitled to $40,000.00 in attorney's fees. The Court does not, by utilizing Mr. Wood's rate, imply anything about how many hours any attorney did or did not work. The Court concludes that an award of $9,796.53 in costs and expenses is warranted since these expenses already have been incurred.

Under the Offer of Judgment, Noonkester is entitled to recover reasonable attorney's fees and costs upon motion to the Court. The Court interprets the offer to include costs that are beyond the list of "taxable costs" provided under the law. If the offer provided that he only could receive "taxable costs," these would be limited to (1) fees paid to the clerk and marshal; (2) court reporter fees for deposition transcripts; (3) witness fees and related expenses; (4) printing fees; and (5) fees for copies of papers necessarily obtained for the case. 28 U.S.C. § 1920. However, the Offer of Judgment is not so limited, and Judge O'Connor should award him $9,796.53 in costs as detailed in his Motion.

Noonkester's counsel writes that "[p]erhaps [his] bill is higher than the total amount paid by all Defendants. Perhaps it is not. Either way, [his] fees are hardly disproportionate considering that he bore the burden of proof—and that he won." ECF No. 77 at 8. But his recovery of $3,000 plus reasonable attorney's fees and costs came at a very high price in terms of the attorney's fees incurred. Under the facts and circumstances at issue in the case, the reasonable and just attorney's fees and costs that he should receive, proportionate to the amount in controversy and what he recovered in the Offer of Judgment, are $40,000.00 in attorney's fees and $9,796.53 in costs.

## IV.    CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT in part** and **DENY in part** Plaintiff's Motion for Attorney Fees and Costs (ECF No. 77) and award

Plaintiff reasonable attorney's fees of $40,000.00 and $9,796.53 in costs.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on July 17, 2024.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

11