UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOEL NOONKESTER, | ) Case Nos. 4:21-cv-700 |
| | )           & |
| Plaintiff, | )     4:22-cv-223 |
| | ) |
| v. | ) |
| | ) JUDGE REED C. O'CONNOR |
| CAPITAL MANAGEMENT HOLDINGS, LLC, ELITE DEBT BROKERS, LLC, ALLIED FINANCIAL GROUP, LLC, and MICHAEL BOVINO, | ) MAG. JUDGE HAL R. RAY, JR. |
| . Defendants. | ) |

**PLAINTIFF JOEL NOONKESTER'S OBJECTIONS TO THE FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF THE U.S. MAGISTRATE JUDGE ON PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS**

This is a Fair Debt Collection Practices Act ("FDCPA") case brought by Plaintiff Joel Noonkester against four Defendants. Mr. Noonkester secured admissions from Defendants that they were liable to him on all counts of his "Amended Complaint – Consolidated," and an offer of judgment for $3,000 plus attorney fees and costs.

The Magistrate Judge correctly found Plaintiff's attorney fee lodestar to be $131,184 and his recoverable expenses to be $9,796.53. (Doc. 88, PageID #1400.) There is a "strong presumption" that the lodestar amount is a reasonable fee. *Ransom v. M. Patel Enters.*, 734 F.3d 377, 388 n.17 (5th Cir. 2013). Nevertheless, the Magistrate Judge recommended that the Court award Plaintiff just $40,000 in attorney fees—a 69.5% reduction--based on his analysis of the *Johnson* factors.

[ 1 ]

The Magistrate Judge found that six of the *Johnson* factors were neutral and did not support either an upward or downward adjustment, but the Magistrate Judge found the remaining factors supported reducing Plaintiff's lodestar. (Doc. 88, PageID #1400.)

Plaintiff objects to Magistrate Judge's findings on the six factors that the Magistrate found pointed toward a downward adjustment. Some of the Magistrate's findings—such as that there was only one Defendant in this case—were clearly erroneous. Others were contrary to law—for instance, the Magistrate weighed the sixth factor (whether the fee is "fixed" or "contingent") against Mr. Noonkester, even though the Fifth Circuit has eliminated that factor.

I.  **ARGUMENT.**

Plaintiff challenges the Magistrate Judge's recommendations on seven of the twelve *Johnson* factors. The Magistrate Judge weighed half the factors as neutral. Plaintiff challenges only the Magistrate Judge's findings with respect to the other six (in bold):

> **(1) the time and labor required for the case;**
> (2) the novelty and difficulty of the issues involved;
> (3) the skill required to litigate the case;
> (4) the ability of the attorney to accept other work;
> **(5) the customary fee for similar work in the community;**
> **(6) whether the fee is fixed or contingent;**
> (7) time limitations imposed by the client or the circumstances of the case;
> **(8) the amount involved and the results obtained;**
> **(9) the experience, reputation, and ability of the attorney;**
> (10) the "undesirability" of the case;
> (11) the nature and length of the attorney-client relationship; and
> **(12) awards in similar cases.**

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

A. The Magistrate Committed Clear Error by Finding that 100 Hours of Attorney Time was the "Time and Labor Required" for the Case.

The Magistrate Judge recommends that the Court award $40,000 in attorney fees based on his conclusion that Mr. Noonkester's claims could have been brought to trial—and won—in 100 attorney hours or fewer. (Doc. 88, PageID# 1402.) That conclusion, however, was based on clearly erroneous findings of fact.

First, the Magistrate Judge based his conclusion on his finding that this case involved only a "single defendant." (Doc. 88, PageID# 1400.) Yet this case involved four Defendants: the collection agency Allied Financial Group, LLC ("Allied"); Allied's owner and manager Michael Bovino ("Bovino"); and the two "debt brokers" Capital Management Holdings, LLC ("CMH") and Elite Debt Brokers, LLC ("Elite").

These Defendants were all differently situated, requiring Plaintiff to allege three distinct theories of liability: direct for Allied, agency for Bovino, and civil conspiracy for CMH and Elite. Plaintiff was also required to defeat defenses specific to individual Defendants, including Bovino's argument that service of process had been ineffective (Doc. 15, PageID# 131); CMH and Elite's argument that the FDCPA did not permit civil conspiracy liability (Doc. 17, PageID# 158); and CMH's argument that its sham bankruptcy discharged all claims against it. (Doc. 50, PageID# 510–11.)

Second, the Magistrate Judge based his conclusion on his finding that this case "seems like a prime candidate to be tried quickly." (Doc. 88, PageID# 1402.) Considering Plaintiff's claims in a vacuum, this finding makes sense. In context, however, it was clearly erroneous because Plaintiff *could not* have brought this case to trial quickly.

Plaintiff's theory of liability with respect to two Defendants was civil conspiracy, and Defendants' near-total refusal to produce their communications (they ultimately produced just a single redacted email) meant that Plaintiff never had anything like the evidence needed to bring his civil conspiracy claims to trial.

Plaintiff's only route to victory was to find some way to obtain the discovery he needed. After more than a year of contentious discovery practice, Defendants had produced just three single-page, heavily redacted documents—two of whose existence Defendants had spent months flatly (and implausibly) denying. *See* (Doc. 61 in consolidated case *Noonkester v. Capital Management Holdings, LLC et al.*, 4:21-cv-00700, at PageID#s 1134, 1410–12.)

Fortunately, the Court made clear at the June 14, 2023 hearing that Plaintiff was correct: Defendant needed to explain *why* it could not find so many documents that it had previously admitted to creating. (Doc. 70, PageID# 956) ("[Y]our colleague here is entitled to evaluate the extent to which you and/or your client have engaged in that process to try to recover those documents.")

The following week, Plaintiff served Defendant Elite with a deposition notice under Rule 30(b)(6) directed to Elite's document retention practices and document production efforts. (Doc. 77-4, PageID# 1058–66.) Defendants immediately saw the jig was up. Six days after receiving the notice of deposition, Elite, Allied, and Bovino all admitted liability and offered judgment. (Doc. 72, PageID# 974–75.)

In other words, Plaintiff could not have achieved this victory without putting in the time and effort necessary to run Defendants out of excuses to obstruct discovery. That

process was always going to take a significant number of hours, given defense counsel's usual tactics. *See Hooker v. Hoover (In re Hoover)*, 289 B.R. 340, 344 (N.D. Ohio 2003) ("Mr. Hoover has shown contempt and disregard for the rules of discovery . . . that has been calculated to obstruct discovery and the timely trial of this cause and justifies the granting of a default judgment on liability.")

Finally, the 100-hour finding failed to account for the Defendants' choice to litigate this case tenaciously, using scorched-earth tactics. The Magistrate Judge should have compared Plaintiff's lodestar with the Defendants' lodestar of nearly $65,000—which was considerably higher than the $40,000 in fees that the Magistrate ultimately recommended.

When defendants litigate "tenaciously," they will not "be heard to complain" about time spent in response. *Robinson v. Nexion Health at Terrell, Inc.*, No. 3:12-CV-3853-L-BK, 2017 U.S. Dist. LEXIS 195906, at *22 (N.D. Tex. Nov. 1, 2017). When the defendant has protracted the litigation, an "inordinate" number of hours over a small recovery is "neither surprising nor unreasonable," and should not lead the Court to reduce fees. *Lewallen v. City of Beaumont*, 394 F. App'x 38, 47 (5th Cir. 2010).

Even in FDCPA cases, where the amount at stake is small, the Fifth Circuit will uphold a large fee award when the defendants have run up the bill. *See Serna v. Law Off. of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 150 (5th Cir. 2015) (upholding $72,133.50 in fees for $1,000 statutory damages).

Here, Defendants:

- Started by threatening Mr. Wood with a Texas bar investigation;

- Moved to dismiss, and after losing that motion, asked for permission to take an interlocutory appeal and refused to engage in discovery;

- Required a Court order before engaging in the Rule 26(f) process;

- Filed motions for sanctions, none of which had any merit;

- Succeeded on just one motion—an unopposed motion to stay.

Looking at just Defendants' motions practice, Plaintiff was required to respond to a total of 15 distinct motion filings. *See* (Docs 5, 9, 10, 15–17, 54, 56); *see also* (Docs 5, 12, 17, 26, 30, 33, 34 in consolidated case No. 2:21-cv-700). If that had been all Plaintiff was required to do, then the Magistrate Judge's 100-hour figure would allow an average of 6.7 hours to respond to each filing. But considering that Plaintiff was also required to obtain the evidence necessary to carry his burden of proof, one hundred hours simply would not have been enough.

For their work, Defendants' counsel received at least $64,523.53 before May 3, 2023. (Doc. 58-8, PageID# 708, ROG #13.) Mr. Hoover admits that "[a]t some early point in time when the expense of this case had far exceeded its value in my opinion, I simply stopped billing anyone." (Doc. 81 at PageID# 1224, ¶ 9.) Yet Mr. Hoover continued to file motions *for free*, giving his clients every incentive to drag this case out.

So, any comparison between the parties' lodestars—Defendants' nearly $65,000 for the "early" work performed for two of four Defendants, versus Plaintiff's higher lodestar for *all* work performed—shows Plaintiff's lodestar is reasonable. The Magistrate thus committed clear error by finding Mr. Noonkester could have won this case in 100 hours.

    B.    <u>The Magistrate Committed Clear Error by Finding that the "Customary Fee" Supported a Downward Adjustment without Accounting for Ten Years of Inflation.</u>

The Magistrate recommended a downward fee adjustment because Mr. Wood billed at $400 per hour, and the "customary fee" for FDCPA cases has been "$345, $350, and $375" in this District.  (Doc. 88, PageID# 1402), *Koehler v. Aetna Health, Inc.*, 915 F. Supp. 2d 789, 799 (N.D. Tex. 2013).  The Magistrate's recommendation of a downward adjustment based on the customary fee is clear error.

First, most of the time billed on this case was by Messrs. Hilton and Parker, who billed at $330—*below* the customary rate cited by the Magistrate.  So there is no reason to adjust the lodestar up or down based on the customary fee.

Second, the Magistrate's customary rate was based on amounts from ten years ago, disregarding significant inflation.  Taking judicial notice of the Consumer Price Index, $345 in the year 2013 has the buying power now of $470.69.[1]  Weighing the customary fee against Mr. Noonkester was thus clear error.

    C.    <u>The Magistrate's Finding on the Sixth Factor was Contrary to Law, Because the Supreme Court Has Eliminated this Factor.</u>

The Magistrate weighed the factor of "whether the fee is fixed or contingent" against Mr. Noonkester.  This factor has been eliminated. *Edwards v. Microsoft Corp.*, No. CV 99-1476 SC/DJS, 2000 U.S. Dist. LEXIS 24294, at *14 (D.N.M. Aug. 31, 2000) (citing

---

[1] *See* CPI Inflation Calculator, *available at*:
https://data.bls.gov/cgi-bin/cpicalc.pl?cost1=345&year1=201301&year2=202406

*City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)).  This factor thus cannot weigh against Mr. Noonkester, and the Magistrate's finding was contrary to law.

> D. The Magistrate's Finding on the Ninth Factor Was Clearly Erroneous Because It Was Already Accounted for in the Billing Rates.

The Magistrate weighed the Ninth Factor—the attorneys' reputation, experience, and abilities—against Mr. Noonkester.  "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account."  *Heidtman v. Cty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).

But the Magistrate had accounted for the lawyers' reputation, experience, and ability in setting the attorneys' hourly rate.  The Magistrate's double-counting of the ninth *Johnson* factor was thus clearly erroneous and contrary to law.

> E. The Magistrate Analyzed No Other Similar Awards, so the Finding on the Twelfth Factor is Clearly Erroneous and Contrary to Law.

The Magistrate weighed the final factor—awards in similar cases—against Mr. Noonkester, but without analyzing any awards from similar cases.  Mr. Noonkester asked the Court to consider two similar cases as a rough benchmark for what is appropriate.  The Magistrate did not examine any similar cases, so the recommendation is clear error.

This case resembles *Serna*, where the defendants' filings reflected a "scorched earth" strategy—including claiming the plaintiff's FDCPA lawsuit was brought in bad faith. 2014 U.S. Dist. LEXIS 102941, at *19–20.  Some defenses raised had little basis in fact or law, and the defendants moved for summary judgment twice.  *Id.* at *20.

The consumer won $1,000 in statutory damages and moved for $80,000 in fees. *Id.* at *32. The trial Court made some slight adjustments for billing judgment and awarded over $72,000 in fees—which the Fifth Circuit upheld. 614 F. App'x at 150.

In another similar case, where the "parties were contentious, resulting in a protracted discovery dispute," the Court awarded $125,207.50 in attorney fees. *Haberman v. PNC Mortg. Co.*, 915 F. Supp. 2d 800, 806 (E.D. Tex. 2013). This case is similar to *Haberman*, because it was also contentious and involved a federal consumer claim.

The Magistrate did not analyze these cases or compare the fee requested here with any other award. Thus, the Magistrate's recommendation was clear error, and this factor should have been weighed in Plaintiff's favor.

## II. CONCLUSION.

On balance, the *Johnson* factors did not point to any upward or downward adjustment of the lodestar in this case. But at the very least, Plaintiff—who carried the burden of proof—should receive as much in attorney fees as Defendants' counsel did. The Defendants' lodestar was over $65,000. Plaintiff requests that if the Court does cut the lodestar, it draw the line at $65,000 plus expenses incurred. Awarding Plaintiff at least as much in fees as what Defendants' counsel received will, in future cases, deter Defendants from engaging in scorched-earth litigation tactics.

Dated: July 31, 2024

/s/ Jonathan Hilton
Jonathan Hilton (0095742)
HILTON PARKER LLC
7658 Slate Ridge Blvd
Reynoldsburg, OH 43068
Tel: (614) 992-2277
Fax: (614) 927-5980
jhilton@hiltonparker.com
*Attorney for Plaintiff*

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
THE WOOD FIRM, PLLC
209 Hubbard Drive
Heath, TX 75032
TEL: 682-651-7599
FAX: 888-598-9022
EMAIL: jeff@jeffwoodlaw.com

/s/ Sharon Campbell
Sharon K Campbell
Law Office of Sharon K Campbell
3500 Oak Lawn Ave, Suite 110
Dallas, TX 75219
Tel: 214-351-3260
Fax: 214-443-6055
Email: sharon@sharonkcampbell.com

## CERTIFICATE OF SERVICE

I, Jonathan Hilton, Esq., do hereby certify that on July 31, 2024, I did serve a copy of these papers through the Court's CM/ECF system, which shall cause service upon all counsel of record.

s/ Jonathan Hilton